UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BUSCH PROPERTIES, INC.,              )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        Case No. 4:12CV2318 SNLJ
                                     )
NATIONAL UNION FIRE INSURANCE        )
COMPANY OF PITTSBURGH, PA.,          )
                                     )
            Defendant.               )

## MEMORANDUM AND ORDER

This case involves a dispute over coverage for Busch Properties, Inc. (BPI) under

commercial general liability policies that National Union Fire Insurance Company of

Pittsburgh, Pa. (National Union) issued. This matter is before the Court on defendant's

motions for protective order to preclude a second corporate deposition of National Union

and the deposition of Michael DiDonato, the current claims analyst handling BPI's claim.

The motions have been briefed and are ripe for disposition. For the following reasons,

the Court will deny the motions for protective order.

**I.     Background**

BPI was the property manager for condominiums at the Kingsmill Resort in

Williamsburg, Virginia, a gated residential golf community. National Union was the

general liability insurance carrier for BPI from September 1, 1994 to July 1, 2004. In or

around October, 2003, BPI personnel became aware of a serious mold problem inside the

condominium development at Kingsmill.  Upon investigation, it became apparent the problem impacted 192 units.

According to BPI, the primary cause of the mold was determined to be the use of impermeable vinyl wallpaper which prevented moisture in the walls from escaping, thereby providing a fertile climate for mold to develop and spread inside the walls of the units.  Mold spread to units without the vinyl wallpaper.  BPI, as the property manager, had selected and installed the vinyl wallpaper in all units enrolled in the rental program, which included nearly all of the units at Kingsmill.  As a result, BPI recognized that it faced significant exposure from potential claims by unit owners and resort guests alleging property damage or bodily injury.  Soon after the mold problem was identified, BPI began receiving claims from individual homeowners and the Kingsmill Homeowners' Associations.

On December 1, 2003, BPI notified its insurers, including National Union, of the problem.  Over the next few months, BPI informed its insurers, including National Union, that its proposed strategy was to proactively remediate the problem rather than waiting for the unit owners and resort guests to file formal lawsuits.  BPI advised its insurers, including National Union, that the remediation plan would have the effect of mitigating the potential damages and thus inure to the benefit of BPI, National Union, and BPI's other insurers who provided coverage excess to that of National Union.  BPI ultimately paid remediation costs of approximately $11.3 million to address the damage caused by the mold problem at Kingsmill.  National Union has not reimbursed BPI for any portion of the remediation costs despite BPI's demand that it do so.

BPI filed this lawsuit on December 17, 2012 alleging claims of breach of contract and vexatious refusal to pay. National Union admits that BPI provided notice regarding the alleged mold problem and its efforts to remediate the affected units. National Union contends, however, that it did not consent or otherwise agree to BPI's remediation plan. National Union filed a counterclaim for declaratory relief alleging that coverage for the remediation costs that BPI seeks to recover is limited or unavailable under the terms of the 1994 and 2003 policies. However, National Union has not provided a final coverage position regarding the BPI's claim.

After a year of litigation, BPI asked National Union for its coverage position via interrogatories. The response it received was that National Union had not reached a final coverage position and that it was continuing to investigate the claim. The interrogatory response and its objections stated: "Discovery is ongoing and National Union, which has not finalized its coverage position, has not identified all facts and documents that might support its position." Following additional written discovery and document production, in February 2014, BPI noticed a Rule 30(b)(6) deposition on the topic of National Union's interrogatory responses. Rather than produce Michael DiDonato – the individual who was handling the claim, verified the interrogatory responses and was identified by National Union as the person who would be making the final coverage determination – NU produced Louis Manger, a claims manager who had not been identified in National Union's interrogatory responses or its Rule 26(a) disclosures as a person with knowledge of facts that might support its position in the case.

Manger had knowledge of the claims handling but admitted that it was DiDonato who was responsible for the matter. Manger testified that National Union had not yet made its final coverage determination and that DiDonato was still actively investigating and analyzing information in order to reach that determination. Specifically, Manger testified: "As far as the underlying claim is concerned, Mr. DiDonato continues to look for and analyze any information that's being provided by Busch." Thus, at the time of its corporate deposition, National Union did not tell its insured if it believes there is coverage for the claim.

On May 28, 2014, BPI issued a notice for a second deposition of National Union under Rule 30(b)(6) seeking National Union's coverage position, its investigation, and the analysis performed by National Union with regard to the claim. BPI also issued a notice for the deposition of DiDonato, who had not yet been deposed. National Union filed motions for protective order to preclude both depositions alleging the depositions would be duplicative and cumulative of prior depositions, the depositions would impose an unreasonable burden on National Union and DiDonato, and that the depositions improperly seek National Union's coverage position and legal analysis of the claim which is protected by attorney-client privilege and the work product doctrine.

## II.    Legal Standard

"Parties may obtain discovery regarding any non privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents . . . ." Fed.R.Civ.P. 26(b)(1). Federal Rule of

Civil Procedure 26 places certain requirements on a party claiming certain information is not subject to discovery:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5)(A). A party may move for an order protecting disclosure or discovery, which is granted only upon a showing of good cause. "The District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.,* 160 F.3d 428, 431 (8th Cir.1998) (citation omitted).

Additionally, Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The burden is . . . upon the movant to show the necessity of its issuance, which contemplates 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "Such determination must also include a consideration of the relative hardship to the non-moving party should the protective order be granted." *Id.* (citing *United States v. Kordel*, 397 U.S. 1, 4-5 (1970)).

## III. Discussion

### A. Corporate deposition of National Union

National Union requests a protective order to preclude BPI from taking a second corporate deposition of National Union under Rule 30(b)(6) on June 30, 2104. National

Union contends that the notice is invalid because BPI did not seek leave of court to take a second deposition of National Union as required by Rule 30(a)(2)(ii).  Further, National Union argues that BPI is not entitled to a second deposition because (1) the listed topics are duplicative and cumulative of the prior corporate deposition, (2) BPI had the opportunity to obtain the information about the topics during the first corporate deposition, and (3) a second deposition would impose an unreasonable burden on National Union.  Finally, National Union argues that two of the three topics – National Union's coverage position and legal analysis of the claim – seek information protected by attorney-client privilege and the work product doctrine.

In response, BPI contends that it may depose National Union a second time without leave of court because the information sought relates to different subject areas than its previous Rule 30(b)(6) deposition notice.  In the alternative, BPI requests leave of court to depose National Union a second time.  BPI alleges that it seeks to discover, from the corporate designee whose testimony is binding on National Union, the insurer's coverage position and the bases for that position.  It contends the second deposition is not cumulative because National Union's corporate designee testified that it had not made its final coverage determination at the time of the first deposition.  BPI argues that National Union should be required to finally explain its coverage position after 18 months of litigation and more than ten years after being put on notice of the claim, especially considering that the information is crucial in order for BPI to effectively prosecute its claims.  Further, BPI maintains that the information sought by the second deposition is not cumulative or duplicative.  Finally, BPI argues that the topics in the second

deposition notice are proper subjects for deposition and that it is not seeking information protected by the work product doctrine or the attorney-client privilege.

Without deciding whether it is necessary for BPI to obtain leave of court to depose National Union a second time, this Court grants BPI leave to take a second corporate deposition of National Union. The discovery at issue in this motion – an understanding of exactly what National Union's coverage position is, what investigation it performed to arrive at it, and whether it was sincerely held – is highly relevant and particularly significant to the vexatious refusal claim. National Union concedes that BPI is entitled to obtain discovery regarding National Union's coverage positions. It argues, however, that the preferred method for such discovery is contention interrogatories and that BPI should not be permitted to depose another party on National Union's legal contentions until it has shown the interrogatory process is ineffective. Contrary to National Union's position, BPI does not carry the burden to show it is entitled to certain discovery. Instead, National Union bears the burden to show good cause as to why the discovery should be prohibited.

National Union, as the moving party, has failed to show good cause to justify the issuance of a protective order to preclude the second corporate deposition. National Union has made only conclusory statements as opposed to a particular and specific demonstration of fact that it would be subject to annoyance, embarrassment, oppression, or undue burden or expense by the second deposition. Additionally, National Union has not specifically stated how or why the deposition would violate the attorney-client privilege or the work product doctrine. Instead, National Union has made conclusory

statements and argued that the coverage position and legal analysis developed by the claims examiner and counsel defending the litigation are inextricably entwined. At the same time, however, National Union admits that BPI is entitled to obtain discovery regarding National Union's coverage positions.

Pursuant to Rule 30(b)(6), BPI has the absolute right to have a corporate designee for National Union state, under oath, National Union's coverage position and the bases for that position. The Court agrees with BPI that after eighteen months of litigation (with discovery closing in three weeks), and after more than ten years since notification of the claim, it is time for National Union to answer these questions. The motion for protective order to preclude BPI from deposing a corporate designee of National Union on June 30, 2014 will be denied.

### B.     Deposition of Michael DiDonato

National Union requests a protective order to preclude BPI from taking a deposition of Michael DiDonato on June 27, 2104. DiDonato became the claims analyst handling BPI's claim on June 6, 2011. National Union argues that DiDonato's deposition is unnecessary because (1) any testimony DiDonato might provide is duplicative and cumulative of prior testimony, including the testimony of the prior analyst handling BPI's claim, (2) BPI has already had the opportunity to obtain anything DiDonato might testify about, and (3) the deposition would impose an unreasonable burden on DiDonato and National Union. Further, National Union argues that it believes BPI intends to use the deposition to inquire into National Union's legal contentions, which it maintains are protected by attorney-client privilege and the work product doctrine. Again, National

Union alleges that the information BPI seeks – National Union's coverage position and legal analysis of the claim – is more appropriately addressed through contention interrogatories.

In response, BPI argues that it is entitled to take the deposition of DiDonato as the claims analyst actively investigating and analyzing the claim and the person making the final coverage determination, as confirmed by Manger during the corporate deposition of National Union. DiDonato has personal knowledge of National Union's investigation and analysis, issues critical to the vexatious refusal to pay claim. BPI alleges it has not been able to depose anyone with first-hand knowledge of the claim handling more recent than 2005 and that National Union should not be allowed to prevent the deposition of its single most significant witness. Finally, BPI argues that it is not up to a defendant to decide what discovery a plaintiff needs.

DiDonato is the current claims analyst handling BPI's claim and he has not previously been deposed in this matter. BPI is, without question, entitled to take his deposition with regard to National Union's coverage position and the bases for that position. Further, in a vexatious refusal to pay claim, "the strategy, mental impressions, and opinion of the insurer's agents concerning the handling of the claim are directly at issue." *Lloyd's Acceptance Corp v. Affiliated FM Ins. Co.*, 4:05CV1934 DDN, 2012 WL 1389708, at *5-6 (E.D. Mo. April 23, 2012). National Union, as the moving party, has failed to show good cause to justify the issuance of a protective order to preclude the deposition of DiDonato. National Union has made only conclusory statements as opposed to a particular and specific demonstration of fact that DiDonato would be subject

to annoyance, embarrassment, oppression, or undue burden or expense by a deposition. Additionally, it has made only conclusory statements alleging that any information DiDonato has regarding the analysis of the claim is protected by attorney-client privilege and the work product doctrine. The motion for protective order to preclude BPI from deposing Michael DiDonato on June 27, 2014 will be denied.

## IV.  Conclusion

In sum, this Court denies defendants' motions for protective order. Further, defendant's motions for expedited consideration and ruling are denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motions for protective order (ECF #32 and #35) are **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motions for expedited consideration and ruling are denied as moot.

Dated this 23rd day of June, 2014.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE